## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| SUGARFINA INC., *et al.* | Case No. 19-11973 (MFW) |
| Debtors.[1] | (Jointly Administered) |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL

Upon the motion (the "**Motion**") dated September 6, 2019 of Sugarfina, Inc., Sugarfina International, LLC and Sugarfina (Canada), LTD as debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Cases**"), pursuant to sections 105, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the corresponding local rules of this District (the "**Local Rules**"), requesting entry of an interim order ("**Interim Order**") and this final order (the "**Final Order**") authorizing the Debtors to, among other things:

(i)     Obtain senior secured postpetition financing in an aggregate principal amount not to exceed $4,000,000.00 (the "**DIP Credit Facility**", and the loans provided to the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian Revenue Agency, as applicable are (1) Sugarfina, Inc., a Delaware corporation (4356) ("Sugarfina, Inc."), (2) Sugarfina International, LLC, a Delaware limited liability company (1254) ("Sugarfina International"), and (3) Sugarfina (Canada), Ltd. (4480).  The location of the Debtors' corporate headquarters is 1700 E. Walnut Ave., 5th Floor, El Segundo, California 90245.

Debtors thereunder, the "**DIP Loans**"), pursuant to the terms and conditions of the DIP Documents (as defined below), the Interim Order and this Final Order;

(ii)     Enter into (a) Debtor-In-Possession Loan and Security Agreement (the "**DIP Agreement**") [2], substantially in the form attached as **Exhibit A** hereto, by and among the Debtors and SFCC Loan Investors, LLC, a Delaware limited liability company ("**SFCC**") and Candy Cube Holdings, LLC ("**Candy Cube**", and together with SFCC, individually and collectively, the "**Lender**") and (b) the documents related to the DIP Agreement (together with the DIP Agreement, the "**DIP Documents**");

(iii)     Borrow, on an interim basis, pursuant to the DIP Documents and the Interim Order, postpetition financing in an aggregate principal amount of up to $2,500,000.00;

(iv)     Borrow, on a final basis, pursuant to the DIP Documents and this Final Order, postpetition financing in an aggregate principal amount of up to $4,000,000.00, inclusive of a roll up of $600,000 (the "**Roll-Up Amount**") of First Lien Obligations (as defined below) into DIP Loans upon entry of a Final Order, and other amounts permitted to be borrowed pursuant to the DIP Agreement (the "**DIP Credit Facility**");

(v)     Execute and deliver the DIP Agreement and the other DIP Documents to the Lender pursuant thereto;

(vi)     Grant to the Lender the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) to secure the DIP Credit Facility and all obligations owing and outstanding thereunder and under the DIP Documents, as applicable, and the Interim Order and the Final Order, as applicable (collectively, and including all "Obligations" as defined in the DIP

---

[2] All capitalized terms not otherwise defined in this Final Order shall have the meaning ascribed to same in the DIP Agreement.

18207560.4
233739-10002
11283223/1

Agreement, the "**DIP Obligations**"), subject only to prior payment of the Carve-Out (as defined below)

(vi)     Grant to the Lender allowed superpriority administrative expense claims in the Cases for the DIP Credit Facility and all DIP Obligations;

(vii)    Use the proceeds of the DIP Credit Facility in accordance with the DIP Agreement, the DIP Documents, the Interim Order and this Final Order, in all cases in accordance with the Budget, a copy of which is attached hereto as **Exhibit B**, and as otherwise provided in the DIP Documents;

(viii)   Use any Prepetition Collateral (as defined below), including the Cash Collateral, and provide adequate protection to those parties set forth herein that may have an interest in such Prepetition Collateral, including Cash Collateral, for any possible Diminution (as hereinafter defined);

(ix)     Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Documents, the Interim Order and this Final Order; and

(x)      Schedule a final hearing (the "**Final Hearing**") to consider entry of this Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

(xi)     Waive, to the extent applicable, any stay of the immediate effectiveness of this Final Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that this Final Order shall be immediately effective upon its entry on the Court's docket.

The Court having considered the Motion, the Declaration of Lance Miller in Support of Chapter 11 Petitions and First Day Relief (the "**First Day Declaration**"), the exhibits attached

233739-10002
11283223/1

thereto, the Declaration of Adam Meislik (the "**Meislik Declaration**"), the proposed DIP Agreement, and the evidence submitted or adduced and the arguments of counsel made at the hearings on the Interim Order (the "**Interim Hearing**") and at the Final Hearing; and notice of the Motion, the Interim Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and the Interim Order; and the Interim Hearing and Final Hearing having been held and concluded and the Interim Order having been entered on September 11, 2019; and it appearing that granting the relief requested in the Motion on a final basis is necessary to avoid immediate and irreparable harm to the Debtors, and is otherwise fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the preservation of the value of the Debtors' property; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED that[3]:**

A.     **Petition Date**.  On September 6, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with this Court.

B.     **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, and over the persons and property affected hereby.  Venue for the Chapter 11 Case and proceedings on the Motion is proper in this

---

[3] The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

18207560.4
233739-10002
11283223/1

district pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

C.    **Notice**.  Notice of the Final Hearing and notice of the Motion has been given by the Debtors to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors (excluding insiders); (ii) counsel to the Lender; (iii) all known holders of liens upon the Debtors' assets; (iv) the attorneys general in the states in which the Debtors conduct their business; (v) the Internal Revenue Service; and (vi) all parties that have filed notices of appearance pursuant to Bankruptcy Rule 2002; by facsimile transmission, email, overnight courier and/or hand delivery.  Under the circumstances, such notice of the Final Hearing and the Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 400, and the Local Rules.

D.    **Debtors' Acknowledgments and Stipulations**.  In requesting the financing from Lender and in exchange for and as a material inducement to Lender to agree to provide the financing in accordance with the DIP Credit Facility, and to the Prepetition Lenders (as defined below) in exchange for any potential Diminution (as defined below), the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates, subject to the Challenge (as defined below) rights set forth in Paragraph 20 of this Final Order, as follows; provided, however that sections (i)(c)-(d) below are for informational purposes and shall not be deemed an acknowledgement, representation, stipulation or agreement by the Debtors regarding the legality, validity or enforceability of the agreements and liens, or the amounts due as referenced therein:

(i)    As of the Petition Date, the Debtors have the following secured indebtedness: (a) $5,000,000 in principal plus accrued and unpaid interest, fees and expenses

owing under that certain Amended and Restated Loan and Security Agreement, dated as of August 16, 2019, by and among SFCC (in such capacity, the "**First Lien Lender**"), Sugarfina, Inc., and Sugarfina International and guaranteed by Sugarfina (Canada) Ltd. (as amended through the date hereof, the "**SFCC Prepetition Loan Agreement**"), pursuant to which Sugarfina Inc., Sugarfina International and Sugarfina (Canada) Ltd. reaffirmed the grant of liens on all or substantially all of their personal property (collectively, the "**Prepetition Collateral**"), (b) $10,900,000 in principal plus accrued and unpaid interest, fees and expenses owing under that certain Note Purchase Agreement, dated as of November 28, 2018, by and between Goldman Sachs Specialty Lending Group, L.P., as purchaser ("**Goldman**," and together with SFCC, the "**Prepetition Lenders**"), and Sugarfina, Inc., as issuer (as amended through the date hereof, the "**Goldman Prepetition Loan Agreement**," and together with the SFCC Prepetition Loan Agreement, the "**Prepetition Loan Documents**"), pursuant to which Sugarfina Inc., Sugarfina International, and Sugarfina (Canada) Ltd. granted liens on all or substantially all of the Prepetition Collateral, which liens are subordinated to those of SFCC pursuant to that certain Lien Subordination Agreement dated as of November 28, 2018 by and between SFCC, as successor by assignment to Avidbank, and Goldman, (c) $8,000,000 plus accrued and unpaid interest, fees and expenses owing under that certain Secured Subordinated Promissory Note and Security Agreement dated July 23, 2018 between Josh Resnick ("**Resnick**") and Sugarfina, Inc., pursuant to which Sugarfina, Inc. granted liens on substantially all its assets, subject to subordination agreements with respect to the SFCC Prepetition Loan Agreement and the Goldman Prepetition Loan Agreement, and (d) approximately $2,150,000 owed to various investors pursuant to that certain Note Purchase Agreement, dated as of June 12, 2019 and amended and restated as of June 24, 2019 (collectively with SFCC, Goldman, and Resnick, the "**Prepetition Secured Lenders**"), pursuant to which Sugarfina, Inc. granted liens

6

on substantially all its assets, subject to subordination agreements with respect to the SFCC Prepetition Loan Agreement and the Goldman Prepetition Loan Agreement.

(ii)      as of the Petition Date: (A) the current outstanding principal balance of the obligations owed to SFCC (the "**First Lien Obligations**") (exclusive of interest, fees, reimbursable expenses and other charges) is not less than $5,000,000 (inclusive of the amount proposed to be rolled up under the DIP Credit Facility) and the current outstanding principal balance of the obligations owed to Goldman (the "**Second Lien Obligations**") (exclusive of interest, fees, reimbursable expenses and other charges) is not less than $10,900,000; (B) all of the First Lien Obligations and Second Lien Obligations (collectively, the "**Prepetition Obligations**") are absolutely and unconditionally owed, respectively, to the First Lien Lender and Goldman (collectively, the "**Prepetition Lenders**"); (C) the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code to the extent applicable); (D) no recoupments, offsets, defenses or counterclaims exist to the Prepetition Obligations; and (E) no portion of the Prepetition Obligations or any payments or other transfers made to the Prepetition Lenders or applied to the Prepetition Obligations prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, recoupment, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii)      the liens of the Prepetition Lenders (the "**Prepetition Liens**") constitute valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected liens with priority over any and all other liens in the Prepetition Collateral (except as otherwise provided in the Prepetition Loan Documents) and are

7

not subject to any challenge or defense, including without limitation, respectively, avoidance, subordination, recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, cross-claim or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral and to assert any recoupments, offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against any Prepetition Lender with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral;

(v)    any payments made on account of the Prepetition Obligations before the Petition Date were (A) payments out of the Prepetition Collateral and/or (B) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors;

(vi)    all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below);

(vii)    none of the Lender or the Prepetition Lenders is a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor;

(viii)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the Lender by offering subsequent lender or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral pursuant to section 364(d) of the Bankruptcy Code or otherwise (except with respect to the Carve-Out (as defined below) and

8

the existing Prepetition Liens in favor of the First Lien Lender, which are not being primed hereunder), unless such subsequent lender or party-in-interest will provide financing that will repay the DIP Obligations in full and in cash on the date such alternative financing is provided;

(ix)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time seek allowance of any administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113 and 1114 of the Bankruptcy Code that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out (as defined below);

(x)    the Prepetition Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the "**Diminution**"), that may be caused by or arising as a result of (A) the incurrence and payment of the DIP Obligations, (B) the use of Prepetition Collateral (including Cash Collateral), (C) the granting of the DIP Liens and the DIP Superpriority Claim, (D) the subordination of the Prepetition Obligations to the Carve-Out, and (E) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.    **Cash Collateral**. For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Lender or the Prepetition Lenders have a lien, security interest or any other interest (including, without limitation, any adequate protection liens or security interests), whether existing

18207560.4
233739-10002
11283223/1

on the Petition Date, arising pursuant to the Interim Order, this Final Order or otherwise, and shall include, without limitation:

(i)     all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, in or on which the Lender or the Prepetition Lenders have a lien or a replacement lien, whether as part of the DIP Collateral or the Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Cases, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Lender or the Prepetition Lenders hold a lien or replacement lien, whether as part of the DIP Collateral or Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)   the proceeds of any sale, transfer or other disposition of DIP Collateral or Prepetition Collateral.

For the avoidance of doubt, the Debtors' ability to use Cash Collateral shall terminate on the earlier of the Maturity Date of the DIP Credit Facility or an acceleration of the DIP Obligations.

F.      **Adequate Protection**. The Prepetition Lenders are entitled, pursuant to sections 361, 363(e) and 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any Diminution that may result from (i) the incurrence of the DIP Obligations, (ii) the use of Prepetition Collateral (including Cash Collateral), (iii) the granting of the DIP Liens and the DIP Superpriority Claim, (iv) the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out, and (v) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

18207560.4
233739-10002
11283223/1

G.    **Findings Regarding the DIP Credit Facility**.

(i)    **Need for the DIP Credit Facility and to Use Cash Collateral**.    An immediate need exists for the Debtors to obtain funds pursuant to borrowings under the DIP Credit Facility and to use Cash Collateral in order to continue operations, fund payroll and operating expenses, and to administer and preserve the value of their estates.    The ability of the Debtors to finance their operations through the DIP Credit Facility and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors' estates, to maximize the value of the Debtors' assets for the benefit of their creditors, and to avoid immediate and irreparable harm to the Debtors, their estates and their creditors.

(ii)    **Priming of Any Prepetition Liens**.    As of entry of the Interim Order and this Final Order, the priming of any existing liens on any of the Prepetition Collateral,[4] except with respect to the liens securing the SFCC Prepetition Debt, which will remain senior in priority, as contemplated by the DIP Documents and as further described below, was and is a condition to the Debtors' borrowings under the DIP Credit Facility, which borrowing is necessary for the Debtors to be able to continue to operate their business for the benefit of their estates and creditors.    Further, nothing herein shall affect or impair any liens that AFCO Acceptance Corporation ("**AFCO**") may have under the insurance policy numbers 01-464-69-32 and 01-426-47-36.    Solely in the event and to the extent that there are obligations outstanding whose interests are primed as set forth below, the parties holding such obligations have consented, or have been deemed to have accepted, such treatment.

---

[4] For the avoidance of doubt, the Prepetition Collateral shall consist of all of the Debtors' assets existing on the Petition Date.

18207560.4
233739-10002
11283223/1

(iii)    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the estates on more favorable terms and conditions than those provided in the DIP Agreement and this Final Order.  The Debtors are unable to obtain credit for borrowed money without granting to the Lender the DIP Protections (as defined below).

H.    **Sections 506(c) and 552(b) Waivers**. In light of the Lender's and First Lien Lender's agreement to subordinate their liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the Lender to agree to provide the DIP Credit Facility, the Lender and First Lien Lender are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code to the extent set forth herein, and the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code.

I.    **Use of Proceeds of the DIP Credit Facility**.  Proceeds of the DIP Credit Facility (net of any amounts used to pay fees, costs and expenses under the DIP Documents) shall be used in a manner consistent with the terms and conditions of the DIP Agreement, the Interim Order and this Final Order and in accordance with the Budget.

J.    **Application of Proceeds of DIP Collateral**.  All proceeds of any sale or other disposition of the DIP Collateral, if any, shall be applied in accordance with the Budget and the terms and conditions of the DIP Documents.

K.    **Effect of Reversal; Good Faith**.  The Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Agreement and this Final Order, provided that the DIP Obligations, DIP Liens and other protections granted by the Interim Order, this Final Order and the DIP Documents will not be affected by any subsequent reversal or modification of this

12

Final Order as provided in section 364(e) of the Bankruptcy Code.  The Lender has acted in good faith in agreeing to provide the DIP Credit Facility approved by this Final Order.

L. **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The terms and conditions of the DIP Credit Facility and the DIP Documents, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)    the DIP Documents and use of Cash Collateral were negotiated in good faith and at arms' length between the Debtors and the Lender; and

(iii)    the DIP Credit Facility loan proceeds to be obtained pursuant to the DIP Documents will be so advanced in good faith, and for valid business purposes and uses, as a consequence of which the Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

M. **Immediate Entry of Final Order**. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b). The permission granted herein to obtain funds under the DIP Documents and to use the Prepetition Collateral (including the Cash Collateral) pursuant to this Final Order is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record

13

made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

NOW, THEREFORE, based upon the foregoing findings, and upon consideration of the Motion and the record made before this Court with respect to the Motion, including the record created during the Interim Hearing and the Final Hearing, and with the consent of the Debtors and the Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor, and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      **Motion Granted**.  The Motion is GRANTED in accordance with the terms and conditions set forth in the Interim Order, this Final Order and the DIP Agreement.  Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  All capitalized terms not otherwise defined in this Final Order shall have the meaning ascribed to same in the DIP Agreement.

2.      **The DIP Documents**.

(a)      **Approval of Entry into the DIP Documents**.  The Debtors are authorized to execute, deliver and perform in accordance with the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order and the DIP Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Documents and the creation and perfection of the DIP Liens described in and provided for by the Interim Order, this Final Order and the DIP Documents.  The Debtors are hereby authorized to use Cash Collateral.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest,

14

fees, expenses, and other amounts described in the DIP Agreement and all other DIP Documents as such become due. Notwithstanding the foregoing or anything set forth in the DIP Documents, (i) the Repayment Premium shall not be an obligation of the Debtors or their estates and shall be satisfied by Goldman as set forth in an agreement between Goldman, SFCC and Candy Cube and (ii) to the extent that the Success Fee is paid by the Debtors, such payment shall be treated as a distribution to Goldman and shall reduce the principal balance of the Second Lien Obligations.

(b)    **Authorization for DIP Financing**. To enable the Debtors to continue to preserve the value of their estates, and subject to the terms and conditions of the Interim Order and this Final Order, the Budget and the DIP Documents, the Debtors are hereby authorized to borrow, pursuant to the DIP Credit Facility and the DIP Documents, a principal amount not to exceed $3,400,000.00.

(c)    **Authorization for Roll-Up**. Upon entry of this Final Order, and subject to Paragraph 20 of this Final Order, $600,000.00 of First Lien Obligations held by First Lien Lender shall be converted into DIP Loans, which will be in addition to the $3,400,000 maximum borrowing permitted by this Final Order. Following such conversion, the First Lien Obligations shall be reduced by $600,000.

(d)    **Conditions Precedent**. The Lender shall have no obligation to make any loans under the DIP Agreement unless the conditions precedent to making such loans under the DIP Agreement, as set forth in Sections 3.1 and 3.2, have been satisfied in full or waived by the Lender in its sole discretion.

(e)    **Enforceable Obligations**. The DIP Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable

18207560.4
233739-10002
11283223/1

against the Debtors, their estates and any successors thereto and their creditors or representatives thereof, in accordance with their terms.

(f)    **Protection of the Lender and Other Rights**.  The Debtors shall use the proceeds of the DIP Credit Facility only for the purposes specifically set forth in the DIP Agreement, the Interim Order and this Final Order and in strict compliance with the Budget (subject to any variances thereto that may be permitted by the DIP Agreement or the Budget).

3.    **The DIP Lien Priority**.

(a)    To secure the DIP Obligations, the Lender was granted pursuant to the Interim Order, and is further granted pursuant to this Final Order and in accordance with Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, valid, enforceable and fully perfected liens (the "**DIP Liens**") in and on all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to all cash, accounts, accounts receivable, goods, inventory, property, plant and equipment, commercial tort claims, intellectual property, contract rights, tax refunds, prepaid expenses, deposits, general intangibles, real estate, leaseholds,[5] all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Documents or not) and any and all proceeds

---

[5] For the avoidance of doubt and notwithstanding anything to the contrary contained herein, unless otherwise expressly permitted by the terms of the applicable lease, any liens granted under this Final Order shall not include the Debtors' real property leases, but shall include the proceeds from the disposition of all such leases.

18207560.4
233739-10002
11283223/1

and property recovered therefrom, any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that constitute Prepetition Collateral, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the **"DIP Collateral"**), subject only to prior payment of the Carve-Out; provided, however, that the DIP Collateral shall not include actions under chapter 5 of the Bankruptcy Code and any proceeds or property recovered in connection therewith;

(b)     The DIP Liens became effective immediately upon entry of the Interim Order and shall continue to remain effective pursuant to this Final Order, and the DIP Liens shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date or created thereafter, including under Sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Carve-Out, the prepetition liens of First Lien Lender and AFCO and the liens held by Local Texas Tax Authorities, consisting of Cypress-Fairbanks ISD, Dallas County, Fort Bend County, Harris County and Montgomery County (the "**Texas Tax Liens**");

(c)     The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of the Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements or any other agreements, filings or instruments, such that no additional actions need be taken by the Lender or any other party

17

(including, without limitation, any depository bank or securities intermediary) to perfect such interests.

(d)    At all times prior to indefeasible payment in cash in full of the DIP Obligations, the priority of the DIP Liens will:

(i)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, be perfected first priority liens on all DIP Collateral which, as of the Petition Date, was unencumbered or subject to invalid, unperfected or avoidable liens;

(ii)    Pursuant to Section 364(c)(3) of the Bankruptcy Code, be perfected junior liens on all DIP Collateral that was, as of the Petition Date, subject to valid, perfected, unavoidable liens in existence at the time of the commencement of the Cases, other than Primed Liens (as hereinafter defined) ("**Senior Third-Party Liens**");

(iii)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, be perfected first priority, senior priming liens on all DIP Collateral that are subject to (a) the existing senior liens in favor of the First Lien Lender that secure the obligations of the applicable Debtors under or in connection with the SFCC Prepetition Loan Agreement, (b) the existing liens of AFCO and (c) Texas Tax Liens, but senior to existing liens granted in favor of the Prepetition Secured Lenders other than the First Lien Lender (collectively, the "**Junior Lienholders**" and collectively with Goldman, the "**Primed Parties**"), all of which existing liens (the "**Primed Liens**") shall be primed by and made subject and subordinate to the perfected first priority senior liens granted to the Lender hereunder, which senior priming liens in favor of the Lender shall also prime any liens granted after the commencement of the Cases to provide adequate protection in respect of any of the Primed Liens;

(iv)    The DIP Liens shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (a "**Successor Case**"), or upon the dismissal of the any of the Cases or Successor Case; and

(v)    Pursuant to the terms of the Interim Order and this Final Order, be subject to the Carve-Out (defined below).

4.    **Superpriority Administrative Claim**. The Lender is hereby granted an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**", together with the DIP Liens, the "**DIP Protections**") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Cases and in any Successor Case(s) for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever,

18

including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof. The DIP Superpriority Claim shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out. The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with any sale of the Debtors' assets.

5.    **Authorization to Use Proceeds of the DIP Credit Facility and Cash Collateral**. Pursuant to the terms and conditions of this Final Order, the DIP Agreement and the other DIP Documents, and in accordance with the Budget and any variances thereto that may be permitted pursuant thereto or pursuant to the DIP Agreement, the Debtors are authorized to use the borrowings pursuant to the DIP Agreement and to use Cash Collateral, terminating upon the occurrence of an Event of Default (as defined below) and/or the termination of the DIP Agreement in accordance with its terms and subject to the provisions hereof.  Subject to the terms of the DIP Agreement, the Debtors and the Lender, with Goldman's consent (not to be unreasonably withheld or delayed) and prior notice to the counsel for the Committee of Unsecured Creditors (the "**Committee**"), may agree in writing to modify the Budget in their discretion at any time that the DIP Credit Facility remains outstanding.

18207560.4
233739-10002
11283223/1

6.      **Relief from the Automatic Stay**.  Subject to the remainder of this paragraph and paragraph 15 of this Final Order, only upon ten (10) Business Days' prior written notice to the Debtors (the "**Remedies Notice Period**"), counsel for the Committee and the U.S. Trustee, and as set forth in this Final Order, the Lender is hereby granted relief from any stay of proceeding (including, without limitation, the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest) to (i) permit, in an Event of Default under the DIP Agreement by the Debtors, foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any of the Debtors which have a value in excess of $100,000 in the aggregate or (ii) permit, in an Event of Default under the DIP Agreement by the Debtors, other actions that would have a Material Adverse Effect on the Debtors or their estates (taken as a whole); provided that such actions are permitted under the DIP Agreement, this Final Order or applicable law; and provided further that the Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Documents.  During the Remedies Notice Period: (i) the Lender shall be stayed from exercising its rights and remedies; and (ii) the Debtors, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Unless the Court orders otherwise upon expiration of the Remedies Notice Period, the automatic stay, as to the Lender, shall be deemed lifted and modified, without further order of this Court, to permit the Lender to exercise any and all of its rights and remedies under the DIP Agreement and this Final Order.  Furthermore, the Lender is hereby granted relief from the automatic stay to take steps to perfect the DIP Liens, as described below.

Notwithstanding anything contained herein to the contrary, upon the occurrence and continuance of an Event of Default, the Lender or any Prepetition Lender, as applicable, may enter upon leased premises only as provided by (A) any separate agreement by and between the

18207560.4
233739-10002
11283223/1

applicable landlord and the Lender or Prepetition Lender (the terms of which shall be reasonably acceptable to the parties thereto), (B) applicable nonbankruptcy law, or (C) an order from the Bankruptcy Court on no less than five (5) days' notice to the applicable landlord.

7.    **Postpetition Lien Perfection**.

(i)    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the Lender may, at its discretion, file financing statements, without notice to the Debtors, with all appropriate jurisdictions to perfect or protect the Lender's interest or rights hereunder, including a notice that any disposition of the DIP Collateral, by any of the Debtors or any other Person, shall be deemed to violate the rights of the Lender under the Uniform Commercial Code.  Such financing statements may indicate the DIP Collateral as "all assets of the Borrower" or words of similar effect, or as being of an equal or lesser scope, or with greater detail, all in the Lender's discretion, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and any and all of such financing statements, mortgages, notices of lien and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.

(ii)    The Debtors shall from time to time execute and deliver to the Lender, at the request of the Lender, all Negotiable Collateral, all financing statements and other documents that the Lender may reasonably request, in form satisfactory to the Lender, to perfect and continue

the perfection of the Lender's security interests in the DIP Collateral and in order to fully consummate all of the transactions contemplated under the DIP Documents.

(iii)    To secure prompt repayment of any and all DIP Obligations and prompt performance by the Debtors of each of its covenants and duties under the DIP Documents, and upon request by the Lender, the Debtors shall execute and deliver to the Lender any documents required under the laws and regulations of Mexico to (a) grant the Lender a continuing security interest in all presently existing and hereafter acquired or arising DIP Collateral located in Mexico or subject to the laws and regulations of Mexico and to (b) to perfect and continue the perfection of such security interest.  The Debtors authorize the Lender to file any required documents under Section 4.4 of the DIP Agreement, without notice to the Debtors, with all appropriate jurisdictions in Mexico to perfect or protect the Lender's interest or rights under the DIP Agreement, in form and substance that is in accordance with the laws and regulations of Mexico.

8.    **Authorization and Direction for Payment of DIP Financing Fees and Expenses**. Subject to the provisions of this Paragraph 8 and Paragraph 2(a) of this Final Order and Paragraphs 8 and 2(a) of the Interim Order, all fees paid or payable, and all reasonable costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Documents and the Lender's reasonable attorneys' fees and expenses), by the Debtors to SFCC and Candy Cube were approved in the Interim Order and are hereby further approved. The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Agreement and the Interim Order and this Final Order, without any requirement that the Debtors, the Lender or their respective attorneys file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs or expenses. To the extent provided in and as limited by the DIP Agreement, the Debtors

18207560.4
233739-10002
11283223/1

shall pay all reasonable prepetition and postpetition out of pocket costs and expenses of SFCC and Candy Cube incurred in their respective capacity as Lender (and not potential purchaser) in connection with the Cases and any Successor Case(s), including, without limitation, in connection with (a) the preparation, negotiation, execution and delivery of the DIP Documents, the Interim Order, and this Final Order, and the funding of all DIP Loans under the DIP Credit Facility, (b) the administration of the DIP Credit Facility and any amendment or waiver of any provision of the DIP Documents, the Interim Order and this Final Order, (c) the administration of the Cases and any Successor Case(s), and (d) the enforcement or protection of the Lender's rights and remedies under the DIP Documents, the Interim Order, and this Final Order; provided, however, that Candy Cube's fees and costs in its capacity as Lender shall be limited to $75,000. Notwithstanding anything to the contrary herein, the payment of all such fees, costs and expenses of SFCC and Candy Cube, whether incurred before or after the Petition Date, including, without limitation, all fees referred to in the DIP Documents and all reasonable attorneys' fees and expenses, shall, (i) subject to Paragraph 20 of this Final Order, be deemed non- refundable and irrevocable, and (ii) not be subject to the Budget but shall be subject to the terms of the DIP Agreement.  None of SFCC's and Candy Cube's attorneys' fees or disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the U.S. Trustee, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court, provided, however, that a copy of such summary invoice shall be provided by SFCC and Candy Cube to the U.S. Trustee, counsel for the First Lien Lender and Second Lender and counsel for the Committee on the same business day as the Debtors' receipt of such summary invoice (redacted for privilege) and such parties shall have fourteen (14) calendar days following the receipt of such invoices to object to the reasonableness of the fees and expenses included in such

23

invoices.  Notwithstanding the foregoing, if (x) the Debtors, U.S. Trustee, First Lien Lender, Goldman or the Committee object to the reasonableness of a summary invoice submitted by SFCC or Candy Cube and (y) the parties cannot resolve such objection, in each case within the fourteen (14) day period following receipt of such summary invoice, the Debtors, the U.S. Trustee or the Committee, as the case may be, shall file with the Court and serve on the Lender party submitting the fee request a fee objection (a "**DIP Secured Party Fee Objection**"), which objection shall be limited to the issue of the reasonableness of such fees and expenses. The Debtors shall promptly pay and/or the Lender is hereby authorized to make an advance under the DIP Agreement to timely pay, any submitted invoice after the expiration of the fourteen (14) day period if no DIP Secured Party Fee Objection is filed with the Court and served on SFCC or Candy Cube, as applicable, in such fourteen (14) day period. If a DIP Secured Party Fee Objection is timely filed and served, the Debtors shall promptly pay and/or the Lender is hereby authorized to make an advance under the DIP Agreement to timely pay, the undisputed amount of the summary invoices, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the DIP Secured Party Fee Objection.

9.      **Carve-Out**.  "**Carve-Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (without regard to the notice set forth in (iv) below) (the "**U.S. Trustee Fees**"); (ii) all reasonable fees and expenses, up to $10,000, incurred by a trustee under section 726(b) of the Bankruptcy Code (the "**Chapter 7 Trustee Fees**"); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court, and to the extent consistent with the entire line amount for "Professional Fees" in the Budget and without regard to the week in which such fees are budgeted to be reserved, all unpaid fees (including, without

24

limitation, transaction fees paid upon the closing of the respective transaction but excluding success fees) and expenses (collectively, the "**Professional Fees**") accrued or incurred by persons or firms retained by (x) the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Professionals**") and (y) any Committee professionals (the "**Committee Professionals**" and, together with the Professionals, the "**Professional Persons**") pursuant to sections 328 or 1103 of the Bankruptcy Code, accrued or incurred at any time on or prior to delivery by or on behalf of the Lender of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) the Professional Fees in an aggregate amount not to exceed $50,000 for amounts incurred after the date of delivery of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**").  "**Carve-Out Trigger Notice**" means a written notice delivered by email (or other electronic means) to the Debtors and their counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Documents, stating (x) that the Post-Carve-Out Trigger Notice Cap has been invoked, (b) the DIP Loans have been accelerated, and (c) the Lender does not intend to fund further advances under the DIP Loans, or consent to further use of Cash Collateral other than as such funding or Cash Collateral use relates to the Carve-Out, to the extent not previously funded or reserved.  No portion of the Carve-Out or proceeds of the DIP Credit Facility may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the Challenge (as defined below) of, (i) the liens and/or claims of the Lender or SFCC, or the initiation or prosecution of any claim or action against the Lender or SFCC in respect of the DIP Documents, the DIP Obligations, the First Lien Obligations, and the SFCC

18207560.4
233739-10002
11283223/1

Prepetition Loan Agreement and the documents entered into in connection therewith, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, and any other federal, state or foreign law, in respect of the DIP Documents and the SFCC Prepetition Loan Agreement or (ii) any claims or causes of actions against the Lender and SFCC under the DIP Documents and the SFCC Prepetition Loan Agreement, their advisors, professionals, agents and sub-agents, including formal discovery proceedings in anticipation thereof; provided, however, that the Lender, SFCC and the Debtors shall comply with informal discovery requests of the Committee.

10.     **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtors or the Committee or affect the right of any party in interest to object to the allowance and payment of such fees and expenses.

11.     **Adequate Protection for Prepetition Lenders.** As adequate protection in respect of, and as consideration for any Diminution resulting from any of the incurrence and payment of the DIP Obligations, the use of Cash Collateral, the use of other Prepetition Collateral, the granting of the DIP Liens and the DIP Superpriority Claim, the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Lenders are hereby granted (in each case subject only to the DIP Liens, the DIP Superpriority Claim, and prior payment of the Carve-Out) the following adequate protection:

(i)     **Adequate Protection Liens**. SFCC is hereby granted (effective and perfected by operation of law immediately upon entry of the Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements, filings or instruments) valid, perfected, postpetition security interests and liens (the "**SFCC Adequate Protection**

18207560.4
233739-10002
11283223/1

**Liens**") in and on all of the DIP Collateral, with a priority subject and subordinate only to (i) the DIP Liens and (ii) prior payment of the Carve-Out. Goldman is hereby granted (effective and perfected by operation of law immediately upon entry of the Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements, filings or instruments) valid, perfected, postpetition security interests and liens (the "**Goldman Adequate Protection Liens**", and together with the SFCC Adequate Protection Liens, collectively, the "**Adequate Protection Liens**") in and on all of the DIP Collateral, with a priority subject and subordinate only to (i) the DIP Liens, (ii) the SFCC prepetition liens, and (iii) prior payment of the Carve-Out.

(ii)    **506(c) and 552(b) Waivers**. SFCC's consent to use of Cash Collateral and Prepetition Collateral under the Interim Order and this Final Order, and the Debtors' right to use Cash Collateral and Prepetition Collateral: (i) is in lieu of any section 506(c) claim, payment or priority for the costs or expenses of the administration of any of these Cases as it relates to SFCC, solely to the extent provided in paragraph 22 herein; and (ii) is granted as consideration for (among other things) the waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code as it relates to SFCC.

12.    **Collateral Rights**.  In connection with any sale or disposition of all or any portion of the DIP Collateral, including in each case pursuant to Sections 9-610 or 9-620 of the Uniform Commercial Code, at any sale thereof conducted under the provisions of the Bankruptcy Code, including section 363 of the Bankruptcy Code or as part of restructuring plan subject to confirmation under section 1129 of the Bankruptcy Code, or at any sale or foreclosure conducted by SFCC, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case in accordance with applicable law and, with respect to any credit bid under section 363(k) of

18207560.4
233739-10002
11283223/1

the Bankruptcy Code, the Debtors hereby give each Lender the power and right, without assent by the Debtors, to "credit bid" the full amount of all Obligations funded by such Lender in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral; provided that SFCC agrees that it will only "credit bid" in a sale if the Asset Purchase Agreement has been terminated pursuant to its terms.

13.     Reserved.

14.     Reserved.

15.     **Rights and Remedies Upon Event of Default**. Upon the occurrence and during the continuance of an Event of Default, the Lender shall have the rights to which it is entitled under the DIP Agreement, subject to Paragraphs 6 and 9 of this Final Order.

16.     **Proofs of Claim**.  Neither the Lender nor the Prepetition Lenders shall be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. The Debtors' Acknowledgments and Stipulations set forth in Paragraph D of this Final Order (and as to the First Lien Obligations, as reduced for the Roll-Up Amount), shall be deemed to constitute a timely filed proof of claim for the Prepetition Lenders upon approval of this Final Order. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Cases or Successor Cases to the contrary, the Prepetition Lenders are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement as it sees fit) a proof of claim and/or proofs of claim in each of these Cases or Successor Cases for any claim allowed herein.

17.     **Other Rights and Obligations**.

(a)     Good Faith Under Section 364(e) of the Bankruptcy Code.  The Lender has acted in good faith in connection with negotiating the DIP Documents, and the loans to be made

18207560.4
233739-10002
11283223/1

pursuant thereto, and their reliance on the Interim Order and this Final Order is in good faith. Based on the findings set forth in the Interim Order and this Final Order, and the record made during the Interim Hearing and Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code and Bankruptcy Rules 4001(b) and, (c) in the event any or all of the provisions of the Interim Order and this Final Order are hereafter reversed, modified amended or vacated by a subsequent order of this or any other Court, the Lender is entitled to all of the benefits and protections provided in section 364(e) of the Bankruptcy Code.

(b)     <u>Binding Effect</u>.  The DIP Liens, DIP Superpriority Claim and, subject to Paragraph 20, the Adequate Protection Liens and other rights and remedies granted under the Interim Order and this Final Order to the Lender, the First Lien Lender and Goldman shall continue in these Cases and any Successor Case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Cases and upon the dismissal of any or all of the Debtors' Cases, or in any Successor Case(s), and such liens and security interests shall maintain their priority as provided in this Final Order until all the DIP Obligations and the Prepetition Obligations have been indefeasibly paid in full in cash and the Lender's commitments have been terminated in accordance with the DIP Documents and this Final Order.

(c)     <u>Lender Expenses</u>.  If the Debtors fail to pay any amounts or furnish any required proof of payment due to third persons or entities, as required under the terms of the DIP Agreement, then the Lender may do any or all of the following after reasonable notice to the Debtors:  (i) make payment of the same or any part thereof; (ii) set up such reserves as the Lender deems reasonably necessary to protect the Lender from the exposure created by such failure, which reserves will be released at such time as the Debtors pay the applicable amounts or as necessary to satisfy the Debtors' obligations for which the reserves were established; or (iii) obtain and maintain

18207560.4
233739-10002
11283223/1

insurance policies of the type discussed in Section 6.8 of the DIP Agreement, and take any action with respect to such policies as the Lender deems prudent.  Any amounts so paid or deposited by the Lender shall constitute Lender Expenses, shall be due and payable in accordance with Paragraph 8 hereof, shall bear interest at the then applicable rate provided in the DIP Agreement, and shall be secured by the DIP Collateral.  Any payments made by the Lender shall not constitute an agreement by the Lender to make similar payments in the future or a waiver by the Lender of any Event of Default under the DIP Agreement.

(d)     The Lender's Liability for Collateral.  So long as the Lender complies with reasonable commercial lending practices, the Lender shall not in any way or manner be liable or responsible for:  (a) the safekeeping of the DIP Collateral; (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (c) any diminution in the value thereof; or (d) any act or default of any carrier, warehouseman, bailee, forwarding agency, or other person whomsoever.  All risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtors.

(e)     Remedies Cumulative.  The Lender's rights and remedies under the DIP Agreement, the DIP Documents, and all other agreements shall be cumulative.  The Lender shall have all other rights and remedies not inconsistent herewith as provided under the California Uniform Commercial Code, by law, or in equity, subject to the requirements of the Bankruptcy Code.  No exercise by the Lender of one right or remedy shall be deemed an election, and no waiver by the Lender of any Event of Default on the Debtors' part shall be deemed a continuing waiver.  No delay by the Lender shall constitute a waiver, election, or acquiescence by it.  No waiver by the Lender shall be effective unless made in a written document signed on behalf of the Lender and then shall be effective only in the instance and for the purpose for which it was given.

18207560.4
233739-10002
11283223/1

(f)    <u>Demand; Protest</u>.  Subject to Paragraphs 6 and 8 herein, the Debtors waive demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of any default, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees at any time held by the Lender on which the Debtors may in any way be liable.

(g)    <u>Borrower Liability</u>.  Any of the Debtors may, acting singly, request Credit Extensions under the DIP Agreement.  Each of the Debtors hereby appoint each other as agent for the other for all purposes under the DIP Agreement, including with respect to requesting Credit Extensions.  Each of the Debtors shall be jointly and severally obligated to repay all Credit Extensions made under the DIP Agreement, regardless of which of the Debtors actually receives said Credit Extension, as if each of the Debtors directly received all Credit Extensions.  Each of the Debtors waive (i) any suretyship defenses available to it under the California Uniform Commercial Code or any other applicable law, including, without limitation, the benefit of California Civil Code Section 2815 permitting revocation as to future transactions and the benefit of California Civil Code Sections 1432, 2809, 2810, 2819, 2839, 2845, 2847, 2848, 2849, 2850, and 2899 and 3433, and (ii) any right to require the Lender to:  (1) proceed against the Debtors or any other person; (2) proceed against or exhaust any security; or (3) pursue any other remedy.  The Lender may exercise or not exercise any right or remedy it has against any Debtor or any security they hold (including the right to foreclose by judicial or non-judicial sale) without affecting any of the Debtors' liability.  Any agreement providing for indemnification, reimbursement or any other arrangement prohibited under Section 9.8 of the DIP Agreement shall be null and void.  If any payment is made to a Debtor in contravention of Section 9.8 of the DIP Agreement, such Debtor

18207560.4
233739-10002
11283223/1

shall hold such payment in trust for the Lender and such payment shall be promptly delivered to the Lender for application to the DIP Obligations, whether matured or unmatured.

(h)    <u>Protective Payments</u>. If the Debtors fail to obtain the insurance called for by Section 6.8 of the DIP Agreement or fail to pay any premium thereon or fail to pay any other amount which the Debtors are obligated to pay under the DIP Agreement or any other DIP Document or which may be required to preserve the DIP Collateral, the Lender may obtain such insurance or make such payment, and all amounts so paid by the Lender are Lender Expenses and shall be payable pursuant to Paragraph 8 hereof, bearing interest at the then highest rate applicable to the DIP Obligations, and secured by the DIP Collateral.  The Lender will make reasonable efforts to provide the Debtors with notice of the Lender obtaining such insurance before it is obtained or making such payment before it is made.  No payments by the Lender are deemed an agreement to make similar payments in the future or the Lender's waiver of any Event of Default.

(i)    <u>Savings Clause</u>. Notwithstanding any other provision of the DIP Agreement, the aggregate interest rate charged with respect to any of the Obligations, including all charges or fees in connection therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate.  If the rate of interest (determined without regard to the preceding sentence) under the DIP Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of the Advances made thereunder shall bear interest at the Highest Lawful Rate until the total amount of interest due thereunder equals the amount of interest which would have been due thereunder if the stated rates of interest set forth in the DIP Agreement had at all times been in effect.  In addition, if when the Advances made under the DIP Agreement are repaid in full the total interest due (taking into account the increase provided for above) is less than the total amount of interest which would have been due under the DIP Agreement if the stated rates

32

of interest set forth in the DIP Agreement had at all times been in effect, then to the extent permitted by law, the Debtors shall pay to the Lender an amount equal to the difference between the amount of interest paid and the amount of interest which would have been paid if the Highest Lawful Rate had at all times been in effect.  Notwithstanding the foregoing, it is the intention of the Lender and the Debtors to conform strictly to any applicable usury laws.  Accordingly, if the Lender contracts for, charges, or receives any consideration which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be cancelled automatically and, if previously paid, shall at the Lender's option be applied to the outstanding amount of the Advances made thereunder or be refunded to the Debtors.

(j)      <u>Amendments in Writing, Integration</u>.  Except as expressly set forth in the DIP Agreement, all amendments to or terminations of the DIP Agreement or the DIP Documents must be in writing signed by each of the parties thereto.  All prior agreements, understandings, representations, warranties, and negotiations between any of the parties thereto with respect to the subject matter of the DIP Agreement and the DIP Documents, if any, are merged into the DIP Agreement and the DIP Documents.

18.    **Release**.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 18 (including section (a) below) and the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of the Interim Order and Paragraph D of this Final Order shall be deemed effective upon entry of the Interim Order, subject only to the rights set forth in Paragraph 20 below. The Debtors forever and irrevocably release, discharge, and acquit each of SFCC and Candy Cube, solely in their capacity as Lender under the DIP Documents, and their affiliates and predecessors in interest, and their respective former and current officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal

33

advisors, shareholders, managers, consultants, accountants, and attorneys (collectively, the "**DIP Lender Releasees**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type related solely to actions taken or omissions in their capacity as Lender under the DIP Documents arising at any time prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code.

(a)      The Debtors forever and irrevocably release, discharge, and acquit SFCC, in its capacity as First Lien Lender, and its respective affiliates and predecessors in interest, and its respective former or current officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys (collectively, the "**Prepetition Lender Releasees**" and collectively with the DIP Lender Releasees, the "**Releasees**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type related solely to actions taken or omissions in their capacity as First Lien Lender under the SFCC Prepetition Loan Agreement arising at any time arising prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code.

19.    **Indemnity**.  Each Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Loans, including in respect of the granting of the DIP Liens and any challenges or objections to the DIP Documents. Accordingly, the Lender shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense,

18207560.4
233739-10002
11283223/1

or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this Paragraph 19 or in the documentation for the DIP Credit Facility, to the Debtors' obligation to indemnify and/or hold harmless the each Lender.

20.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The releases set forth in Paragraph 18 above and in Paragraph 18 of the Interim Order, and the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of the Interim Order and Paragraph of this Final Order shall be binding upon the Debtors upon entry of the Interim Order. In addition, such releases and stipulations shall be binding upon each other party in interest, including the Committee, unless a party in interest having standing, *first,* commences, (x) within sixty-(60) calendar days from date of the formation of the Committee for actions brought by the Committee, or (y) seventy-five (75) calendar days following the date of entry of the Interim Order for any party other than a Committee (such time period established by clauses (x) and (y), shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly and timely file a Challenge and only for the matters specifically set forth in such Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the " "**Challenge Period Termination Date**"), (A) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) challenging or otherwise objecting to the releases set forth in Paragraphs 18 of the Interim Order and this Final Order or the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of the Interim Order and this Final Order or (B) a contested

matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) against any Releasee relating to any pre-Petition Date act, omission or aspect of the relationship between such Releasee and the Debtors ((A) and (B) being, collectively, the "**Challenges**" and, each individually, a "**Challenge**"), and, *second,* obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action; *provided, however*, that if prior to the Challenge Period Expiration Date the Committee files a motion seeking standing to prosecute a Challenge (together with a copy of the proposed complaint relating thereto attached), the Challenge Period Termination shall be extended, solely with respect to such Challenge specifically set forth in the proposed complaint and solely for the Committee, to the date this Court enters a final order on such motion seeking standing. Upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Case(s), (i) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred and (ii) the releases in Paragraph 18 of the Interim Order and this Final Order, and the Debtors' Acknowledgments and Stipulations set forth in Paragraph D of the Interim Order and this Final Order shall be binding on all parties in interest, including any Committee.  For the avoidance of doubt, the Committee's right to challenge under this Paragraph 20 shall include the right to challenge the conversion of the Roll-Up Amount into DIP Loans under applicable law (other than challenging Debtors' authority to pay the Roll-Up Amount).

21.    **Restrictions on Use of Funds**. Notwithstanding anything in the Interim Order, this Final Order or the DIP Documents to the contrary, without the express written consent of the Lender, no proceeds of the DIP Credit Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or

36

party in interest, the Committee, any trustee appointed under these Cases or any Successor Case(s), or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy Code or otherwise, other than from the Lender, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations in accordance with this Final Order, or (b) investigate (except as set forth in this paragraph below), assert, join, commence, support or prosecute any Challenge or other action or claim, counter-claim, proceeding, application, motion, objection, defense, or other adversary proceeding or contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the Lender or any other Releasee, in their lender capacity, with respect to any transaction, occurrence, omission, or action relating to the DIP Financing or Prepetition Obligations including, without limitation, (i) any actions under chapter 5 of the Bankruptcy Code, (ii) any action relating to any act, omission or aspect of the relationship between or among any of the Releasees, on the one hand, and any of the Debtors, on the other, (iii) any action with respect to the validity and extent of the DIP Obligations, the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens or the Adequate Protection Liens, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the DIP Liens, the Prepetition Obligations, the Prepetition Liens, or the Adequate Protection Liens, or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) any Lender in respect of the enforcement of the DIP Liens, (c) subject to authority provided to the Debtors pursuant to the DIP Documents, pay any claim (as defined in the Bankruptcy Code) of a prepetition creditor (as defined in the Bankruptcy Code) if the Debtors have received a written objection to such payment from the Lender, and/or (d) use or seek to use Cash Collateral or sell or otherwise dispose of DIP

18207560.4
233739-10002
11283223/1

Collateral, unless otherwise permitted hereby or by the DIP Documents, without the express written consent of the applicable Lender. Notwithstanding the foregoing, up to $60,000 in the aggregate of the DIP Credit Facility, DIP Collateral, Cash Collateral and Carve-Out may be used by the Committee during the Challenge Period to investigate claims against the Releasees.

22.     **Limitation on Surcharge**. Without limiting the terms of the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Cases or any Successor Case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against either Lender, the Carve-Out (other than parties entitled to assert a right to be paid under the Carve-Out), the DIP Collateral or the Prepetition Collateral of the First Lien Lender, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of SFCC (and the beneficiaries of the Carve-Out in the case of a surcharge against the Carve-Out); provided however, that the 506(c) waiver shall not apply with regard to any claims, costs and expenses that may be asserted pursuant to section 503(b)(9) of the Bankruptcy Code. No action, inaction or acquiescence by the Lender or the First Lien Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against either Lender, the DIP Collateral, the First Lien Lender or the Prepetition Collateral of the First Lien Lender. For the avoidance of doubt, the 506(c) waiver set forth herein shall not apply to Goldman.

23.     **No Marshalling**. The First Lien Lender and the Lender (and after payment in full of the DIP Obligations, Goldman) shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral. Without limiting the generality of the immediately preceding sentence, no party (other than the First Lien Lender, the Lender and after payment in full of the DIP Obligations, Goldman) shall be

18207560.4
233739-10002
11283223/1

entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral or the Prepetition Collateral (as applicable) after an Event of Default under the DIP Documents.

24.    **Survival of Final Order and Other Matters**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or a Successor Case, (iii) to the extent authorized by applicable law, dismissing the Cases, (iv) withdrawing the reference of the Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Cases in this Court and this Final Order. The terms and provisions of this Final Order shall be binding upon the Debtors and the Lender, the Prepetition Secured Lenders and each of their respective successors and assigns, and shall inure to the benefit of the Debtors and the Lender, the Prepetition Secured Lenders and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed or elected in a case for any Debtor under any chapter of the Bankruptcy Code, including any Successor Case. The terms and provisions of this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed or elected under chapter 7 or chapter 11 of the Bankruptcy Code.

(a)    Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(b)    Enforceability.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil

Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

(c)    Objections Overruled.    All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled on an interim basis.

25.    **Governmental Consents**.  Except as otherwise provided herein, the execution, delivery and performance by the Debtors of the DIP Documents and the consummation of the transactions contemplated by the DIP Documents do not and will not require any registration with, consent or approval of, or notice to, or other action to, with or by, any governmental authority.

26.    **Adequate Notice/Miscellaneous**.

(a)    The notice given by the Debtors of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001, the Local Rules of this Court and the Interim Order. Such notice was good and sufficient under the particular circumstances and no other or further notice of the request for the relief granted at the Interim Hearing or the Final Hearing was required. The Debtors shall promptly mail copies of this Final Order to any known party affected by the terms of this Final Order and any other party requesting notice after the entry of this Final Order.

(b)    Priority of Terms. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as limited by" or "as more fully described in" the DIP Documents (or words of similar import), the terms and provisions of this Final Order shall govern.

18207560.4
233739-10002
11283223/1

(c)  <u>Texas Tax Liens</u>.  Notwithstanding any provisions of the Interim Order or this Final Order, use of cash collateral, the closing of certain store locations, the sale of the Debtors' assets, or any agreements validated by any such orders, the alleged Texas Tax Liens currently held by the Local Texas Tax Authorities (Cypress-Fairbanks ISD, Dallas County, Fort Bend County, Harris County and Montgomery County) or which shall arise during the course of these Cases pursuant to applicable non-bankruptcy law, shall neither be primed by nor subordinated to any liens granted by the Interim Order or pursuant to this Final Order. Furthermore, from the proceeds of the sale of any of the Debtors' assets located in the state of Texas, the amount of $46,000 shall be set aside by the Debtors in a segregated account as adequate protection for the alleged secured claims of the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor. The liens of the Local Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed only upon agreement between the Local Texas Tax Authorities and the Debtors, or by subsequent Order of the Court, duly noticed to the Local Texas Tax Authorities.

(d)  <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Final Order.

Dated: October 8th, 2019
Wilmington, Delaware

41

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

18207560.4
233739-10002
11283223/1