## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SGR WINDDOWN, INC., <u>et al.</u>,[1] | Case No. 19-11973 (MFW) |
| Debtors. | (Jointly Administered) |
| | **D.I. 616, 517, 587. 601, 604, 622, 625, 627, and 631** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE PLAN OF REORGANIZATION FOR SGR WINDDOWN, INC. AND AFFILIATED DEBTORS DATED FEBRUARY 24, 2020

The *Plan of Reorganization for SGR Winddown, Inc. and Affiliated Debtors Dated February 24, 2020* [Docket No. 518] (as modified, amended, or supplemented from time to time, the "**Plan**"),[2] the Plan Supplement [Docket No. 604] and the *Amended Disclosure Statement for the Plan of Reorganization for SGR Winddown, Inc. and Affiliated Debtors Dated February 24, 2020* [Docket No. 563] (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**"), all having been filed having been filed with the Bankruptcy Court by the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"); and the Disclosure Statement, and appropriate ballots for voting on the Plan having been approved, and transmitted to Holders of Claims against the Debtors in the Voting Classes, pursuant to that certain order approving the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of tile 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "**Bankruptcy Code**"), and authorizing the service and solicitation of acceptances

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian Revenue Agency, as applicable are (1) SGR Winddown, Inc., a Delaware corporation (4356), (2) SGR Winddown International, LLC, a Delaware limited liability company (1254), and (3) SGR Canada Winddown Legacy, Ltd. (4480). The location of the Debtors' corporate headquarters is 4712 Admiralty Way #552, Marina Del Rey, CA 90292.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable.  The rules of interpretation set forth in Article 1.B. of the Plan apply.

and rejections of the Plan, establishing related deadlines and procedures, and setting May 12, 2020 as the Confirmation Hearing (the "**Disclosure Statement Order**") [Docket No. 568]; and the Plan Supplement having been filed on April 24, 2020 [Docket No. 604]; and the affidavits of service filed in respect of the Disclosure Statement Order, the Disclosure Statement, the Plan (appended to the Disclosure Statement) and the Confirmation Hearing Notice [Docket Nos. 587 and 601] ("**Affidavits of Service**") each having been filed; and the Debtors having filed the *Debtors' Memorandum of Law in Support of Confirmation of Plan of Reorganization for SGR Winddown, Inc. and Affiliated Debtors Dated February 24, 2020* [Docket No. 631] (the "**Confirmation Memorandum**"; and the *Declaration of Lance Miller in Support of Confirmation of the Plan of Reorganization for SGR Winddown, Inc. and Affiliated Debtors Dated February 24, 2020* [Docket No.627] (the "**Miller Declaration**"), and the *Declaration of Tinamarie Feil Regarding Solicitation and Tabulation of Ballots in Connection with the Plan of Reorganization for SGR Winddown, Inc. and Affiliated Debtors Dated February 24, 2020* [Docket No. 623] (the "**Voting Report**") having been filed with this Court prior to the Confirmation Hearing that was scheduled for May 12, 2020 (the "**Confirmation Hearing**"); notice of the hearing to consider Confirmation of the Plan having been published in the New York Times national edition on April 3, 2020; the Court having found that due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtors and other parties-in-interest in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Court (the "**Local Rules**"), in each case as established by the affidavits of service, mailing and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "**Notice Affidavits**")[3]; and upon all of the proceedings held before this Court and after full

---

[3]    The Notice Affidavits are located at Docket Nos. 587 and 601.

consideration of: (i) The Plan; (ii) the Plan Supplement; (iii) the Confirmation Memorandum; (iv) the Voting Report; (v) testimony proffered or presented in support of Confirmation; (vi) the declarations and/or affidavits filed with this Court; and (vii) all other documents comprising the record in these cases, the arguments and representations of counsel, and the evidence proffered and/or adduced in support of Confirmation; and after due deliberation thereon; and each of the objections to the Confirmation of the Plan filed in opposition to the Plan having been resolved or overruled; and good cause appearing therefor; the Court makes and issues the following findings of fact, conclusions of law and Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. On September 6, 2019 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these cases (the "**Chapter 11 Cases**"). The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B. On September 17, 2019, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**") [Docket No. 97].

C. These Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

D. VENUE, CORE PROCEEDING; EXCLUSIVE JURISDICTION. On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors were qualified and are qualified to be debtors under section 109(d) of the Bankruptcy Code. Venue was proper as of the Petition Date and continues to be proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has jurisdiction over these Chapter

- 3 -

11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

E.  JUDICIAL NOTICE.  The Court takes judicial notice of the docket in these Chapter 11 Cases maintained by Clerk or the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases.

F.  BURDEN OF PROOF.  The Debtors, as proponent of the Plan, have the burden of proving the elements under sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden as further found and determined herein.

G.  SOLICITATION AND NOTICE.  On March 30, 2020, the Court entered the Disclosure Statement Order.  The Disclosure Statement Order, among other things, approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment whether to accept or reject the Plan.  Pursuant to the Disclosure Statement Order, the Debtors served the Solicitation Package (as defined in the Disclosure Statement Order) upon: all known Holders of Claims against the Debtors as of the Voting Record Date who were entitled to vote on the Plan (i.e., Classes 2 and 5); (ii) the Securities & Exchange Commission; (iii) the Internal Revenue Service; (iv) the Office of the United States Trustee; and (v) those parties that have requested service under Bankruptcy Rule 2002.  The Solicitation Packages consisted of: (i) notice of the Confirmation Hearing and objection deadline; (ii) the Disclosure Statement; (iii) the Plan (appended to the Disclosure Statement); (iv) an appropriate ballot; (v) the Disclosure Statement

- 4 -

Order; and (vi) a pre-addressed return envelope (collectively, the "**Solicitation Package**"). The Solicitation Packages were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. As described in the Disclosure Statement Order, and as evidenced by the Voting Report, the certificates of service filed in connection therewith, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Code and Bankruptcy Rules, and provided due process and an opportunity to appear and be heard to all parties-in-interest. Pursuant to the Disclosure Statement Order, the Debtors served the Notice of Non-Voting Status on each Holder of a Claim or Interest in the Non-Voting Classes.

H. VOTING. The Disclosure Statement Order fixed May 1, 2020 as the Voting Deadline. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement, and Disclosure Statement Order. As set forth in the Voting Report, the Plan has been accepted, within the meaning of section 1126(c) of the Bankruptcy Code, by Classes 2 and 5, which are impaired and entitled to vote on the Plan. Classes 1, 3 and 4 are unimpaired and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and are therefore, not entitled to vote. Classes 6 and 7 receive no distribution under the Plan and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

I. PLAN SUPPLEMENT. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included in the Plan Supplement

are adequate and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, compliance with the Bankruptcy Code and the Bankruptcy Rules, and, solely with respect to matters that have a material effect on the assets, liabilities, Executory Contracts of the Reorganized Debtor, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.

J. SATISFACTION OF CONFIRMATION REQUIREMENTS. The Plan satisfies the requirements for confirmation set forth in sections 1129(a) and (b) of the Bankruptcy Code, as set forth below:

(a) 11 U.S.C. § 1129(a)(1): The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

(i) 11 U.S.C. § 1122: Each Claim or Equity Interest placed in a particular Class under the Plan is substantially similar to the other claims or interests in that Class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Equity Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests.

(ii) 11 U.S.C. §1123: Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan classifies Claims and Interests into seven (7) different Classes (except for Administrative Claims, Priority Tax Claims, and United States Trustee statutory fees which are not classified). Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article IV of the Plan specifies all Claims and Interests that are not impaired and specifies the treatment of all Claims and Interests that are impaired. Article IV identifies Classes 1, 3 and 4 as unimpaired, and identifies Classes 2 and 5, 6 and 7 as impaired. Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan also provides the same treatment for each Claim or Interest within a particular Class. Pursuant to section 1125(a)(5) of the Bankruptcy Code, the Plan provides adequate means for the Plan's implementation, as set forth in Article V of the Plan. The Debtors will have, immediately upon the effectiveness of the Plan, sufficient cash available to

make all payments that are required to be made on the Effective Date pursuant to the terms of the Plan.

(b) <u>11 U.S.C. § 1129(a)(2)</u>: As required by 11 U.S.C. § 1129(a)(2) of the Bankruptcy Code, the Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. §§ 1125 and 1126 and Bankruptcy Rules 3017, 3018 and 3019. In particular, the solicitation of votes to accept or reject the Plan was (i) in compliance with all applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation, and (ii) solicited after disclosure to holders of Claims and Interests. The Debtors have further complied with all the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice of the Confirmation Hearing, approval of the Disclosure Statement and all other matters considered by the Court in the Chapter 11 Cases. The record in the Chapter 11 Cases further discloses that the Debtors have attempted in good faith to comply with the orders of the Court entered during the pendency of the case and that the Debtors have not violated any such orders.

(c) <u>11 U.S.C. § 1129(a)(3)</u>: The Debtors have proposed the Plan in good faith and not by any means forbidden by law. No person has filed a valid objection to confirmation of the Plan on the grounds that the Plan was not proposed in good faith or by any means forbidden by law. Accordingly, pursuant to Bankruptcy Rule 3020(b)(2), the Court may determine compliance with section 1129(a)(3) of the Bankruptcy Code without receiving evidence on such issues. The Court has examined the totality of the circumstances surrounding the formulation of the Plan and the evidence submitted in connection with the Confirmation hearing. The Plan has been accepted by the requisite holders of Claims in Classes 2 and 5 entitled to vote on the Plan and such acceptance evidences the informed judgment of Creditors that the Plan is in their best interests. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a distribution of such value to Creditors. The Plan was negotiated in good faith and at arms' length among representatives of the Debtors, the Creditors' Committee, and certain other key creditor constituencies during the Chapter 11 Cases. Further, based on the evidentiary record adduced at the Confirmation Hearing and the Court's findings and conclusions based thereon, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. § 77(e), as amended). Accordingly, the provisions of section 1129(d) of the Bankruptcy Code are met. Therefore, the Plan has been proposed in good faith, as such term is used in section 1129(a)(3) of the Bankruptcy Code.

(d) <u>11 U.S.C. § 1129(a)(4)</u>: The Plan appropriately provides for Court approval of all payments for services in connection with the Chapter 11 Cases and therefore satisfies section 1129(a)(4) of the Bankruptcy Code.

(e) <u>11 U.S.C § 1129(a)(5)</u>: The identity, affiliations, and compensation of the person proposed to serve as the initial director and officer of the Reorganized Debtor after Confirmation of the Plan have been full disclosed in the Plan Supplement.

(f) <u>11 U.S.C. § 1129(a)(6)</u>: No governmental regulatory commission has jurisdiction over the rates of the Debtors. Section 1129(a)(6) is inapplicable to confirmation of the Plan.

(g) <u>11 U.S.C. § 1129(a)(7)</u>: With respect to each Impaired Class of Claims or Interests of the Debtors, each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. A conversion of the Chapter 11 Cases to chapter 7 would likely be accompanied by a decrease in the amount of recovery that Creditors would receive on account of their claims as a result of the elimination of the Goldman Sachs Settlement, as well as the accrual of commissions and additional administrative fees and expenses during a chapter 7 case. Further, a chapter 7 liquidation would result in delay in distributions to Creditors. Thus, the Plan provides a superior recovery to Creditors than conversion of the Chapter 11 Cases, and accordingly, the Plan is in the best interests of creditors under section 1129(a)(7) of the Bankruptcy Code.

(h) <u>11 U.S.C. § 1129(a)(8) / 11 U.S.C. § 1129(b)</u>: Classes 1, 3 and 4 are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

(i) <u>11 U.S.C. § 1129(a)(9)</u>: The treatment of Allowed General Administrative Claims, Other Priority Claims, Allowed Priority Tax Claims, and Secured Tax Claims, under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

(j) <u>11 U.S.C. § 1129(a)(10)</u>: The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

(k) <u>11 U.S.C. § 1129(a)(11)</u>: The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; and (d) establishes that the Reorganized Debtor will have the financial wherewithal to satisfy its obligations following the Effective Date.

(l) <u>11 U.S.C. § 1129(a)(12)</u>: The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article 12.12 of the Plan provides for the payment of all fees due and payable under 28 U.S.C. § 1930 by the Debtors or Reorganized Debtor, as applicable.

(m)     11 U.S.C. § 1129(a)(13):  The requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable to the Plan because the Debtors are not obligated to fund any retiree benefits within the meaning of this statute.

(n)     11 U.S.C. § 1129(a)(14) and (15):  These statutes apply only to individual debtors and thus are inapplicable to confirmation of the Plan.

(o)     11 U.S.C. § 1129(a)(16):  The requirements of section 1129(a)(16) of the Bankruptcy Code are not applicable to confirmation of the Plan because none of the Debtors are a nonprofit entity or trust.

(p)     "Cram Down" Requirements – Section 1129(b)(1) and (2):  The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

(q)     11 U.S.C. § 1129(c):  The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

(r)     11 U.S.C. § 1129(d):  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

(s)     11 U.S.C. § 1129(e):  The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

(t)     11 U.S.C. § 1125(e):  The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

K.      SATISFACTION OF CONFIRMATION REQUIREMENTS.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

L.      LIKELIHOOD OF SATISFACTION OF CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.  Each of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article IX of the Plan.

M.      IMPLEMENTATION.   All documents necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and

- 9 -

all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, their estates, and their creditors and interest holders, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

N.    EXECUTORY CONTRACTS. The Debtors' decisions to assume and to reject certain Executory Contracts, as provided in Article VI of the Plan and in the Plan Supplement, are reasonable exercises of the Debtors' business judgment. To the extent that there are any Executory Contacts or Unexpired Leases which have been assumed, the Debtors have demonstrated adequate assurance of future performance of such Executory Contracts and Unexpired Leases within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

O.    GOOD FAITH. The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby, and (b) take the actions authorized and directed by this Confirmation Order.

## ORDER

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT HEREBY IS ORDERED THAT:**

1.    **FINDINGS OF FACT AND CONCLUSIONS OF LAW**. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

11672806/5

2. **SOLICITATION**. To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

3. **BALLOTS**. The forms of Ballots are in compliance with Bankruptcy Rule 3018(c), the Disclosure Statement Order, the Bankruptcy Code and the Local Rules.

4. **NOTICE OF CONFIRMATION HEARING**. The Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects, and was in compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5. **CONFIRMATION**. The Plan and all exhibits thereto, including, without limitation, the documents contained in the Plan Supplement, are approved in their entirety and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

6. **OBJECTIONS**. Any objections to confirmation of the Plan that have not been withdrawn or resolved by stipulation are hereby overruled.

7. **PROVISIONS OF PLAN AND ORDER NON-SEVERABLE AND MUTUALLY DEPENDENT**. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are (a) non-severable and mutually dependent; (b) valid and enforceable pursuant to their terms; and (c) integral to the Plan and this Confirmation Order, respectively, and may not be deleted or modified except in accordance with Article X of the Plan.

8. **RECORD CLOSED**. The record of the Confirmation Hearing is closed.

9. **BINDING EFFECT AND VALIDITY**. The provisions of the Plan and this Order shall bind the Debtors, the Estates, the Reorganized Debtor, and all holders of Claims against and Equity

Interests in the Debtors, including their successors and assigns, whether or not the Claims or Equity Interests of these entities are impaired under the Plan, whether or not these entities have voted to accept or reject the Plan, and whether or not these entities have filed proofs of Claim or proofs of Interest in the Chapter 11 Cases. Each Plan term and provision, as it may be interpreted in accordance with the Plan, is valid and enforceable under its terms.

10. **PLAN CLASSIFICATION CONTROLLING**. The classification of Claims and Interests for purposes of distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan (a) were set forth on the Ballots solely for the purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by and creditors as representing the actual classification of such Claims under the Plan for distribution purposes, and (d) shall not be binding on the Debtors, the Reorganized Debtor, or the Holders of Claims and Interests for purposes other than voting on the Plan.

11. **CONTINUED CORPORATE EXISTENCE OF THE REORGANIZED DEBTOR**. On and after the Effective Date, the Reorganized Debtor will continue to exist as a separate corporation and shall retain all of the powers of corporations under applicable non-bankruptcy law, and without prejudice to any right to amend its charter, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence. On and after the Effective Date, the Reorganized Debtor shall be permitted to conduct its business without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be authorized, subject to the requirements of the Plan regarding the Distribution

- 12 -

Assets, to use and dispose its assets to acquire and dispose of other property, and to otherwise administer its affairs.

12. **CORPORATE ACTION**. On the Effective Date, the matters under the Plan involving or requiring corporate, partnership or limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, shareholders, managers or members of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by this Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, managers or members of the Debtors. From and after the Effective Date, the Holders of Interests in the Reorganized Debtor may take any and all necessary or appropriate actions to appoint directors, officers, and managers of the Reorganized Debtor consistent with the charter, articles of incorporation, and/or by-laws of the Reorganized Debtor, subject to any limitations in applicable non-bankruptcy law and subject to the Plan Supplement.

13. **U.S. Trustee Fees and Post-Confirmation Reports**. After the Effective Date, (a) solely with respect to the Reorganized Debtor, the Reorganized Debtor shall (i) pay any statutory fees due for the post-Effective Date period pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the bankruptcy case of the Reorganized Debtor, and (ii) file post-confirmation status reports in the form of a post-confirmation operating report on a quarterly basis up to the entry of a final decree closing the bankruptcy case of the Reorganized Debtor.

14. **DISSOLUTION OF CREDITORS' COMMITTEE**. Following the Effective Date, the Creditors' Committee shall continue in existence and have standing and capacity to (i) prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the

Creditors' Committee or its respective Professionals, and (ii) pursue or otherwise address liquidation of the Candy Cube Liquidated DIP Expenses and the Candy Cube Liquidated Substantial Contribution Claim, to the extent such Expenses or Claim are not liquidated through a Final Order upon the Effective Date. Following the completion of the foregoing, the Creditors' Committee shall be dissolved and the members of the Creditors' Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases.

15.    **EXECUTORY CONTRACTS**.  On the Effective Date, other than those Executory Contracts and Unexpired Leases that have been expressly assumed, all Executory Contracts of the Debtors will be rejected by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts that: (i) have already been assumed or rejected by the Debtors by prior order of the Bankruptcy Court; (ii) are the subject of a separate assumption motion or motion to reject Filed by the Debtors pending on the Effective Date; (iii) are the subject of a pending objection regarding assumption, cure, or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code); or (iv) are assumed or assumed and assigned by the Debtors pursuant to the terms of the Plan and Filed as a schedule as part of the Plan Supplement.  Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract, entry of this Order by the Bankruptcy Court shall constitute approval of such assumptions or rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract assumed pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is

- 14 -

modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or the Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

16. **CLAIMS ON ACCOUNT OF THE REJECTION OF EXECUTORY CONTRACTS**. All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, pursuant to the Plan or this Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the Effective Date. Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtor, or their Estates, and the Debtors, the Reorganized Debtor, and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article VIII of the Plan.

17. **EFFECTUATION OF THE PLAN**. The Estates, the Debtors, Reorganized Debtor, and the Creditors' Committee, are authorized to execute and deliver any and all documents and instruments and take any and all actions necessary or desirable to implement the Plan and this

- 15 -

Order and to effect any other transactions contemplated therein or thereby. To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtors, Reorganized Debtor, and Creditors' Committee are authorized - without further notice or application to or order of the Court - to execute, deliver, file, or record such agreements or documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the shareholders or boards of directors of the Debtors, this Order constitutes such consent and approval.

18. **TREATMENT IS IN FULL SATISFACTION**. Except as otherwise agreed in writing and approved by the Court, the treatment set forth in the Plan for each Class of Claims and Equity Interests is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each Entity holding a Claim or an Equity Interest may have in or against the Debtors, their Estates, the Reorganized Debtor or their respective property. This treatment supersedes and replaces any agreements or rights those Entities may have in or against the Debtors, their Estates, the Reorganized Debtor or their respective property.

19. **RELEASES AND EXCULPATION.** Except as modified herein, the releases and exculpation provisions contained in the Plan, including, but not limited to, those provided in Article VIII of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein. Further, and solely by way of clarification, consistent with this Court's Order dated May 7, 2020, all of the estates' claims as against Joshua Resnick and Rosie O'Neill are released.

20. **INJUNCTION.** Pursuant to Article VIII of the Plan, except as otherwise expressly provided in the Plan or this Order, from and after the Effective Date, all Persons and Entitles are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind; or (v) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, settled or to be settled or discharged or to be discharged under the Plan or this Order against any person or entity so released or discharged (or the property or estate of any person or entity so released, discharged). All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Notwithstanding anything to the contrary contained in the Plan or this Confirmation Order, and notwithstanding any of the releases, discharges, injunctions or waivers set forth in the Plan, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of any counterparty to an unexpired lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law.

21. **BINDING NATURE OF THE PLAN.** Pursuant to Article XII of the Plan, on the Effective Date, and effective as of the Effective Date, the Plan shall bind, and shall be deemed binding upon, the Debtors, the Reorganized Debtor, any and all Holders of Claims against and

Equity Interests in the Debtors, all persons and entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each person acquiring property under the Plan, any and all non-debtor parties to Executory Contracts and Unexpired Leases with the Debtors and the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such person or entity (i) will receive or retain any property, or interest in property, under the Plan, (ii) has filed a proof of claim or interest in the Chapter 11 Cases or (iii) failed to vote to accept or reject the Plan, affirmatively voted to reject the Plan or is conclusively presumed to reject the Plan.

22.  **NOTICE OF ENTRY OF CONFIRMATION ORDER AND EFFECTIVE DATE.**  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable on or after the Effective Date, the Debtors or Reorganized Debtor shall provide notice of the entry of this Confirmation Order and of the occurrence of the Effective Date by serving a Notice of Effective Date, on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; provided, however, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person or Entity of that Person's or Entity's new mailing address.  The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required.  The Notice of Effective Date shall constitute sufficient

notice of the entry of this Confirmation Order to such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

23. **REVERSAL OR MODIFICATION OF CONFIRMATION ORDER.** Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Bankruptcy Court, or any other court of competent jurisdiction, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors or the Reorganized Debtor, as applicable, prior to the date that the Debtors or the Reorganized Debtor received actual written notice of the effective date of such reversal, stay, modification or vacatur. Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act, obligation, indebtedness, liability, priority or Lien incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date that the Debtors or the Reorganized Debtor received actual written notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in each case in effect immediately prior to the date that the Debtors or the Reorganized Debtor received such actual written notice.

24. **NEW PLAN SECTION 5.18.** The Plan shall be amended to provide for a new Section 5.18 titled "Goldman Sachs Obligations Related to the DIP Facility," which shall provide as follows:

> In accordance with the Final Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Authorizing the Debtors' Use of Cash Collateral entered by the Bankruptcy Court on October 8, 2019 [Docket No.. 227] (the "DIP Order"), to the extent that the Lender (as

defined in the DIP Order) is entitled to the DIP Success Fee, such DIP Success Fee shall be paid to SFCC Loan Investors, LLC ("SFCC"), as administrative agent under the DIP Facility, at such time that Goldman Sachs would receive such amounts from recoveries that are otherwise payable to Goldman Sachs or by Goldman Sachs from the Goldman Sachs Non-Purchase Interest Recovery. To the extent the DIP Success Fee is not paid on or about the Effective Date, the Reorganized Debtor shall provide SFCC with information upon reasonable notice regarding any consideration that Goldman Sachs receives (and in no event later than ten (10) business days after providing any such consideration to Goldman Sachs) on account of the Purchaser Membership Interest to enable SFCC to determine its entitlement to the DIP Success Fee.

Pursuant to the September 11, 2019 letter agreement between Goldman Sachs, SFCC and Candy Cube Holdings LLC [Docket No. 103-2] referred to in the DIP Order, and not withstanding anything to the contrary set forth in the Plan or the Confirmation Order, a portion of the Goldman Sachs Cash Consideration in an amount sufficient to pay the Repayment Premium (as defined in the DIP Facility) shall be paid to SFCC on or about the Effective Date for distribution to holders of Serene Facility Claims, which amount shall reduce the Goldman Sachs Cash Consideration that would otherwise be paid to Goldman Sachs pursuant to the Plan.

25.    **REVISED PLAN SECTION 5.18.**   Section 8.03 of the Plan, titled "Releases by Third

Parties" shall be amended to provide as follows:

To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Released Parties shall be forever released from any and all claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities throughout the world under any law or court ruling through the Effective Date (including all claims based on or arising out of facts or circumstances that existed as of or prior to the Effective Date, including claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise) which the Debtors, their Estates, the Reorganized Debtor, Creditors or other persons receiving or who are entitled to receive distributions under the Plan may have against any of them in any way related to the Chapter 11 Cases, the Debtors (or their predecessors), or any of their operations or businesses; provided however that the foregoing release is granted only by the (a) Creditors who are unimpaired, and (b) Creditors who returned a Ballot and did not check the opt-out box on the Ballot; and provided further, however, that the release provided in this Section shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or ultra vires acts under applicable law.

- 20 -

26.     **INCONSISTENCY**.   In the event of any inconsistency between the Plan and this Order, this Order shall govern.

27.     **PRESERVATION OF PRIVILEGE AND DEFENSES**.   No action taken by the Debtors or Reorganized Debtor in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors or Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).   Notwithstanding the Reorganized Debtor providing any privileged information to the Distribution Agent or any party or person associated with the Distribution Agent, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged.   The Debtors or the Reorganized Debtor retain the right to waive their own privileges. The Distribution Agent shall have no right to any privileged information or analysis of the Debtors or the Reorganized Debtor.

28.     **RETENTION OF JURISDICTION**.   The Court shall retain jurisdiction as provided in Article XI of the Plan.

29.     **STAY OF CONFIRMATION ORDER SHORTENED**.   The 14-day stay otherwise applicable to this Order under Federal Rule of Bankruptcy Procedure 3020(e) shall be shortened from fourteen (14) days to three (3) days following entry of this Order.

Dated: May 13th, 2020
Wilmington, Delaware

**MARY F. WALRATH**
- 21  **UNITED STATES BANKRUPTCY JUDGE**